UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY FRY | ) | CASE NO. 1:24-cv-126 |
| c/o Spangenberg Shibley & Liber LLP | ) | |
| 1001 Lakeside Avenue East, Suite 1700 | ) | JUDGE |
| Cleveland, OH 44114 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PHIL R. STAMMITTI | ) | **COMPLAINT** |
| LORAIN COUNTY SHERIFF | ) | |
| 9896 Murray Ridge Rd. | ) | ***[Jury Demand Endorsed Hereon]*** |
| Elyria, OH 44035 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CORRECTIONS OFFICER BRIAN TELLIER | ) | |
| c/o Lorain County Sheriff | ) | |
| 9896 Murray Ridge Rd. | ) | |
| Elyria, OH 44035 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SERGEANT JENNIFER JONES | ) | |
| c/o Lorain County Sheriff | ) | |
| 9896 Murray Ridge Rd. | ) | |
| Elyria, OH 44035 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CORRECTIONS OFFICER PUFFNOCK, | ) | |
| FIRST NAME UNKNOWN | ) | |
| c/o Lorain County Sheriff | ) | |
| 9896 Murray Ridge Rd. | ) | |
| Elyria, OH 44035 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE CORRECTIONS OFFICER NO. 1 | ) | |
| c/o Lorain County Sheriff | ) | |
| 9896 Murray Ridge Rd. | ) | |
| Elyria, OH 44035 | ) | |

and     )

JOHN DOE CORRECTIONS OFFICER NO. 2 )
c/o Lorain County Sheriff   )
9896 Murray Ridge Rd.   )
Elyria, OH 44035    )

and     )

JOHN DOE CORRECTIONS OFFICER NO. 3 )
c/o Lorain County Sheriff   )
9896 Murray Ridge Rd.   )
Elyria, OH 44035    )

and     )

JOHN DOE CORRECTIONS OFFICER NO. 4 )
c/o Lorain County Sheriff   )
9896 Murray Ridge Rd.   )
Elyria, OH 44035    )

and     )

JOHN DOE CORRECTIONS OFFICER NO. 5 )
c/o Lorain County Sheriff   )
9896 Murray Ridge Rd.   )
Elyria, OH 44035    )

and     )

JOHN DOE CORRECTIONS OFFICER NO. 6 )
c/o Lorain County Sheriff   )
9896 Murray Ridge Rd.   )
Elyria, OH 44035    )

and     )

JANE DOE CORRECTIONS OFFICER NO. 1 )
c/o Lorain County Sheriff   )
9896 Murray Ridge Rd.   )
Elyria, OH 44035    )

and     )

2

LAUREN AROBOGAST, L.P.N.                    )
c/o Lorain County Sheriff                   )
9896 Murray Ridge Rd.                       )
Elyria, OH 44035                            )
                                            )
        and                                 )
                                            )
JOHN DOE MEDICAL WORKER NO. 1               )
c/o Lorain County Sheriff                   )
9896 Murray Ridge Rd.                       )
Elyria, OH 44035                            )
                                            )
        and                                 )
                                            )
JANE DOE MEDICAL WORKER NO. 1               )
c/o Lorain County Sheriff                   )
9896 Murray Ridge Rd.                       )
Elyria, OH 44035                            )
                                            )
        and                                 )
                                            )
CITY OF ELYRIA / ELYRIA POLICE              )
DEPARTMENT                                  )
131 Court St.                               )
Elyria, OH 44035                            )
                                            )
        and                                 )
                                            )
POLICE OFFICER ALI SEBEIHA                  )
c/o Elyria Police Department                )
18 West Ave.                                )
Elyria, OH 44035                            )
                                            )
        and                                 )
                                            )
LIFECARE AMBULANCE, INC.                    )
c/o Peter Andre De La Porte, Statutory Agent )
640 Cleveland St.                           )
Elyria, OH 44035                            )
                                            )
        and                                 )
                                            )
PARAMEDIC JESSICA BERAN                     )
640 Cleveland St.                           )
Elyria, OH 44035                            )
                                            )

3

| | |
|---|---|
| and | ) |
| | ) |
| HANNAH GIUSTI, E.M.T. | ) |
| 640 Cleveland St. | ) |
| Elyria, OH 44035 | ) |
| | ) |
| Defendants. | ) |

Now comes Plaintiff Jeffrey Fry, by and through counsel, and for his Complaint against the above-captioned Defendants states and avers as follows.

### PRELIMINARY STATEMENT OF THE CASE

1.     This action arises from incidents that occurred inside the Lorain County Jail on May 12, 2023, during which Defendant Corrections Officer Brian Tellier slammed and threw Plaintiff Jeffrey Fry ("Mr. Fry") head-first into a wall and concrete floor, all while Mr. Fry's hands were cuffed behind his back.

2.     Mr. Fry suffered a head/neck/spinal cord injury, which, as demonstrated on surveillance video, was obvious to the Defendants who were present and who and all responded or otherwise observed Mr. Fry after Defendant Tellier's attack. Mr. Fry had blood on his head and face, was dazed, and was unable to walk, stand, or control the movement of his extremities.

3.     Responding Defendants, however, continued to use gratuitous, unreasonable, and outrageous force against Mr. Fry or otherwise supervised or failed to intervene to prevent the force or to make sure Mr. Fry got the medical care he required.

4.     None of the Defendants stabilized Mr. Fry's head or neck, despite him having suffered an obvious head/neck/spinal cord injury. Instead, as depicted on surveillance videos, Mr. Fry was dragged by his handcuffed arms into a booking vestibule, his legs and feet sliding across the concrete floor.

5.     Once in the booking vestibule, Mr. Fry continued to show signs and symptoms of a head/neck/spinal cord injury. Again, however, none of the Defendants ever stabilized or immobilized Mr. Fry's head or neck. Rather, Mr. Fry was violently manhandled, thrown onto a gurney face down, and flipped over onto his back, all with deliberate indifference to his serious medical needs and with reckless disregard for his well-being.

6.     Mr. Fry suffered a permanent spinal cord injury resulting in paralysis, chronic pain, and disability.

7.     The three surveillance videos that captured the incidents at issue at the Lorain County Jail are attached as Exhibit 1.

8.     The claims asserted herein arise from the acts, failures to act, and omissions committed, and policies, procedures and customs in place and/or implemented, while Plaintiff Jeff Fry was in the custody of the Lorain County Sheriff and the Elyria Police Department on May 12, 2023, during which time the law enforcement Defendants, all of whom were acting under color of law, violated and/or failed to intervene to prevent the violation of Mr. Fry's known and clearly established constitutional rights to be free from the use of excessive gratuitous force and to adequate and necessary medical care under the Fourth and/or Fourteenth Amendments.

9.     Defendants Lauren Arbogast, LPN, John Doe Medical Worker No. 1, and Jane Doe Medical Worker No. 1 acted wantonly and with reckless and callous disregard for and deliberate indifference to Mr. Fry's serious and obvious medical needs, and in a manner that shocks the conscience and offends traditional notions of decency.

10.    Defendants Paramedic Beran and Giusti, EMT acted in a wanton and willful manner and with reckless disregard for Mr. Fry's health, well-being, and safety, under circumstances where serious injury to Mr. Fry was substantially likely to and did occur.

11.     The Lorain County Jail, the administration for which Defendant Lorain County Sheriff is responsible, has a shocking pattern of gratuitous excessive force being used against jail detainees, and of denying detainees prompt and adequate medical care for their serious medical needs, which is the result of unconstitutional customs, practices, and policies at the Jail and the Lorain County Sheriff's Office.

12.     Defendant Lorain County Sheriff implemented and/or had in place, at all times relevant, policies and customs that violated and/or that were applied in such a way that they violated the constitutional rights of detainees at the Lorain County Jail, including Mr. Fry, to be free from the use of excessive force and to prompt and adequate medical care to treat serious medical needs.

13.     Plaintiff seeks monetary damages (compensatory and punitive), as well as an award of costs and reasonable attorneys' fees, and all such other relief as the Court deems appropriate.

## PRELIMINARY ALLEGATIONS

14.     Plaintiff brings this action, in part, under 42 U.S.C. § 1983 and under the Fourth and/or Fourteenth Amendments of the United States Constitution and pursuant to the general laws of the United States and the laws of the state of Ohio.

15.     Plaintiff alleges that the conduct of each law enforcement Defendant, individually and collectively, deprived him of his constitutional right to be free from unreasonable force and to prompt and adequate medical care and caused him to suffer grievous physical injury and mental and emotional pain and suffering while under the care, custody and control of Defendants Lorain County Sheriff and the Elyria Police.

16.     Each of the Defendants named in the following Claims for Relief caused, and is responsible for, the unlawful conduct and resulting harm by, *inter alia*, personally participating in

the conduct, supervising those involved in the conduct at issue, or acting jointly and in concert with others who did so; by authorizing, acquiescing, or failing or refusing, with deliberate indifference to and reckless disregard for Mr. Fry's clearly established and known rights, to initiate and maintain adequate training, supervision and staffing; by failing to maintain proper and adequate policies, procedures and protocols, and customs and practices; and by ratifying the unlawful conduct performed by agents and officers, deputies, medical providers, personnel and employees under their direction, supervision, and control.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and laws of the United States, to wit, the Fourth and/or Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

18.     Supplemental jurisdiction over the state law claims asserted herein exists and is invoked pursuant to 28 U.S.C. § 1367.

19.     Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1) and (e)(2).

## PARTIES

20.     At all times relevant, Plaintiff Jeffrey Fry was and is a resident of the State of Ohio residing in the Northern District of Ohio.

21.     At all times relevant, Mr. Fry was in the custody of the Defendant Lorain County Sheriff and Defendant Elyria Police.

22.     At all times relevant, Defendant Lorain County Sheriff Phil Stammitti, sued herein in his official capacity, is and was the lawful Sheriff of Lorain County, Ohio and, through the Lorain County Sheriff's Office and its employees and agents, was the Sheriff of a duly authorized

law enforcement agency, with the ability to sue and be sued, residing in Lorain County in the Northern District of Ohio. Defendant Lorain County Sheriff Stammitti is a "person" capable of being sued under 42 U.S.C. § 1983.

23.     At all times relevant, Defendant Lorain County Sheriff Stammitti was responsible for the administration, operation and supervision of the Lorain County Jail and facilities and for the promulgation, enforcement and review of rules, regulations, policies, customs, and practices relevant thereto, who was acting under color of law.

24.     Defendant Lorain County Sheriff Stammitti operated, maintained and/or controlled the Lorain County Jail where the incidents at issue took place on May 12, 2023, during which time Mr. Fry was under the care, custody, and control of Defendant Lorain County Sheriff Stammitti, including the employees and agents of the Lorain County Jail/Sheriff's Office.

25.     At all times relevant, Defendant Corrections Officer Brian Tellier was a corrections officer acting under the color law within the course and scope of his employment with the Lorain County Sheriff/Lorain County. Defendant Tellier is a "person" capable of being sued under 42 U.S.C. § 1983 and is sued in his individual capacity. Defendant Tellier is a resident of Ohio residing in the Northern District of Ohio.

26.     At all times relevant, Defendant Corrections Officer Puffnock, First Name Unknown at this time, was a corrections officer acting under the color law within the course and scope of his employment with the Lorain County Sheriff/Lorain County. Defendant Puffnock is a "person" capable of being sued under 42 U.S.C. § 1983 and is sued in his individual capacity. Defendant Puffnock is a resident of Ohio residing in the Northern District of Ohio.

27.     At all times relevant, Defendant Sergeant Jennifer Jones was a corrections sergeant acting under the color law within the course and scope of her employment with the Lorain County

8

Sheriff/Lorain County. Defendant Jones is a "person" capable of being sued under 42 U.S.C. § 1983 and is sued in her individual capacity. Defendant Jones is a resident of Ohio residing in the Northern District of Ohio.

28. At all times relevant, Defendant John Doe Corrections Officer Nos. 1-6 and Jane Doe Corrections Officer No. 1 were corrections officers acting under color of law within the course and scope of their employment with the Lorain County Sheriff/Lorain County, whose identities, despite Plaintiff's diligence, are not and cannot be known at this time. These John and Jane Doe Defendants are depicted and identifiable by description on the surveillance videos attached at Exhibit 1. Plaintiff will amend the Complaint upon discovery of these Defendants' individual identities. These Corrections Officer Defendants are "persons" capable of being sued under 42 U.S.C. § 1983 and are sued in their individual capacities. Upon information and belief, these Corrections Officer Defendants are residents of Ohio residing in the Northern District of Ohio.

29. At all times relevant, Defendant Lauren Arbogast, LPN was a licensed practical nurse licensed to practice in the State of Ohio who was acting under color of law within the course and scope of her employment with the Lorain County Sheriff/Lorain County. Defendant Arbogast is a "person" capable of being sued under 42 U.S.C. § 1983 and is sued in her individual capacity. Defendant Arbogast is a resident of Ohio residing in the Northern District of Ohio.

30. At all times relevant, Defendant John Doe Medical Worker No. 1 and Jane Doe Medical Worker No. 1 were medical professionals acting under color of law within the course and scope of their employment with the Lorain County Sheriff/Lorain County, whose identities, despite Plaintiff's diligence, are not and cannot be known at this time. These John and Jane Doe Defendants are depicted and identifiable by description on the surveillance videos attached at Exhibit 1. Plaintiff will amend the Complaint upon discovery of these Defendants' individual

identities. These Medical Worker Defendants are "persons" capable of being sued under 42 U.S.C. § 1983 and are sued in their individual capacities. Upon information and belief, these Medical Worker Defendants are residents of Ohio residing in the Northern District of Ohio.

31. At all times relevant, Defendant City of Elyria/Elyria Police Department was and is a political subdivision located in the Northern District of Ohio that operates a police department and employs police officers. Defendant City of Elyria/Elyria Police Department is a "person" capable of being sued under 42 U.S.C. § 1983.

32. At all times relevant, Defendant Ali Sebeiah was and is a police officer who was acting under color of law within the course and scope of his employment with Defendant City of Elyria/Elyria Police Department. Defendant Sebeiah is a "person" capable of being sued under 42 U.S.C. § 1983 and is sued in his individual capacity. Defendant Sebeiah is a resident of Ohio residing in the Northern District of Ohio.

33. At all times relevant, Defendant Lifecare Ambulance, Inc. was and is a for-profit Ohio corporation with its principal place of business located in Lorain County in the Northern District of Ohio that was and is engaged in the business of providing emergency medical services to the public, including responding to calls for emergency medical services originating from the Lorain County Jail.

34. At all times relevant, Defendant Paramedic Jessica Beran was a paramedic licensed in the State of Ohio who was acting within the course and scope of her employment and/or agency with Defendant Lifecare Ambulance, Inc. rendering Defendant Lifecare Ambulance, Inc. vicariously liable for her conduct alleged herein.

35. At all times relevant, Defendant Hannah Giusti, EMT, was an emergency medical technician licensed in the State of Ohio who was acting within the course and scope of her

employment and/or agency with Defendant Lifecare Ambulance, Inc. rendering Defendant Lifecare Ambulance, Inc. vicariously liable for her conduct alleged herein.

## GENERAL FACTUAL ALLEGATIONS

36.     On May 12, 2023, Elyria Police officers arrested Plaintiff Jeffrey Fry on a Municipal Court bench warrant for failure to appear in connection with a misdemeanor charge.

37.     Later that day, Defendant Elyria Police Officer Sebeiha transported Mr. Fry to the Lorain County Jail.

38.     Upon arrival in the sally port of the Jail, Defendant Sebeiha opened the rear door of his cruiser and Mr. Fry, handcuffed with his hands behind his back, walked unescorted without Defendant Sebeiha physically touching him to the door of the male booking vestibule where they waited to be let inside.

39.     Mr. Fry exited Defendant Sebeiha's cruiser, walked through the sally port, waited at the door to the male booking vestibule, and then entered with Defendant Sebeiha, where they waited for approximately seven minutes, all without incident.

40.     Defendant Tellier entered the male booking vestibule, removed Mr. Fry's handcuffs, instructed Mr. Fry to remove his sunglasses and shoes, which Mr. Fry did, and conducted a pat down search of Mr. Fry, all without incident.

41.     Following the search, Defendant Tellier cuffed Mr. Fry's hands behind his back, grabbed Mr. Fry by his left arm and escorted Mr. Fry out of the male booking vestibule into the sally port with Defendant Sebeiha present and accompanying them. Upon information and belief, Defendant Tellier was intending to take Mr. Fry to the body scanner area as part of the booking process.

42.     Mr. Fry was cuffed with his hands behind his back and not wearing any shoes as Defendant Tellier escorted him through the sally port with Defendant Sebeiah following closely behind.

43.     No other detainees or Jail staff members were present.

44.     As he escorted Mr. Fry through the sally port of the Lorain County Jail, with Defendant Sebeiha accompanying them, without any reasonable basis or justification, and under circumstances where Mr. Fry posed no threat of escape or of physical injury to anyone, Defendant Tellier suddenly, aggressively, and violently slammed Mr. Fry head-first into a glass wall and onto the ground.

45.     Defendant Tellier hooked Mr. Fry's left arm, lowered his body weight, and violently propelled Mr. Fry in a downward angle head-first into a glass wall and the concrete floor.

46.     Defendant Tellier performed an uncontrolled take-down maneuver, propelling Mr. Fry 90 degrees toward the base of the wall, all without any reasonable justification or basis.

47.     Defendant Tellier's use of force was disproportionate in response to any alleged conduct by Mr. Fry and was gratuitous and unreasonable under the circumstances.

48.     His hands cuffed hands behind his back, Mr. Fry was unable to protect himself, including his head, from slamming into the wall and the floor.

49.     Defendant Sebeiha was present and witnessed Defendant Tellier take Mr. Fry down and slam him head-first into the wall and floor.

50.     Mr. Fry lost consciousness and went limp upon Defendant Tellier slamming him head-first into the wall and concrete floor.

51.     Defendant Tellier jumped on Mr. Fry's back as Mr. Fry lay motionless on the ground.

52.     Without ever immobilizing or stabilizing Mr. Fry's head and neck, Defendant Tellier used additional unnecessary, gratuitous, and outrageous force, yanking and pulling Mr. Fry's limp body off the ground, trying to get him to stand up, which Mr. Fry was unable to do.

53.     Defendant Sebeiha stood by and watched; he never intervened to prevent Defendant Tellier's unreasonable, gratuitous, and outrageous uses of force or to otherwise assist Mr. Fry or prevent Defendant Tellier from physically assaulting Mr. Fry.

54.     Defendant John Doe Corrections Officer No. 1 responded to the sally port and, while Defendant Tellier was trying to pull Mr. Fry up off the ground, John Doe Corrections Officer No. 1 used unreasonable, gratuitous, and outrageous force against Mr. Fry, grabbing him and pushing down on his back causing Mr. Fry to strike his face and head on the concrete floor a second time.

55.     While Mr. Fry was lying motionless face down on the ground with his hands cuffed behind his back, Defendant John Doe Medical Worker No. 1 and Defendant John Doe Corrections Officer No. 2 responded.

56.     Defendant Tellier then grabbed Mr. Fry's left arm as Mr. Fry lay motionless face down on the ground and pulled Mr. Fry over and onto his butt and across the floor propping Mr. Fry up against the wall in a seated position.

57.     At no point in time did any of the Defendants present up to this point do anything to stabilize or immobilize Mr. Fry's head or neck or otherwise take any precautions to protect a man in their custody who had an obvious head/neck/spinal cord injury.

58.     Defendants Jones, Puffnock, Jane Doe Corrections Officer No. 1, and John Doe Corrections Officer Nos. 3-6 responded to the scene in the sally port.

59.     Clearly injured, Mr. Fry remained on the ground, dazed with blood visible on his face and mouth.

60.     Defendants Tellier and Sebeiah witnessed and knew that Mr. Fry had struck his head during the takedown.

61.     The other Defendants who responded to the sally port knew, including specifically Defendant Jones, that Mr. Fry had "hit[] his head where the wall and the floor meet."

62.     At no point in time in the sally port did Defendant Sebeiah do anything to intervene to prevent the repeated episodes of gratuitous, unnecessary, and outrageous force used against Mr. Fry, or to otherwise protect or assist Mr. Fry. Rather, Defendant Sebeiah stood by and watched.

63.     At no time in the sally port following Defendant Tellier's takedown did any of the Defendants request medical personnel to respond to the sally port to evaluate Mr. Fry.

64.     At no point in the sally port did any of the responding Defendants perform any medical assessment of Mr. Fry, despite his obvious and serious medical needs and condition.

65.     At no point in the sally port did any of the responding Defendants stabilize, immobilize, secure, or otherwise take any precautions to protect Mr. Fry, despite knowledge and obvious signs and symptoms of a head/neck/spinal cord injury.

66.     At no point in the sally port did Defendant John Doe Medical Worker No. 1 perform any medical assessment of Mr. Fry.

67.     All responding Defendants other than Defendants Tellier, Sebeiah, and John Doe Medical Worker No. 1 then left the sally port.

68.     Defendants Tellier and John Doe Medical Worker No. 1 then used unreasonable, gratuitous, and outrageous force against Mr. Fry by dragging him across the concrete floor by his

handcuffed arms with his legs and feet dragging on the ground back into the male booking vestibule. Defendant Sebeiah watched and followed.

69.     Defendant Arbogast was present inside the male booking vestibule when Defendants Tellier and John Doe Medical Worker No. 1 arrived, dragging Jeff, and placed him on the floor sliding him with his back propped against the wall. Mr. Fry had blood visible on his head and face and was not moving his extremities.

70.     As part of her assessment, Defendant Arbogast documented that Mr. Fry had been in an "ALTERCATION WITH CORRECTIONS STAFF," and that he appeared to be in acute distress, was unable to walk, and had unstable vital signs.

71.     Mr. Fry remained on the floor, his back propped up against the wall for the next approximately 17 minutes, during which time his legs did not move.

72.     During this time, Defendants Tellier, Jones, John Doe Medical Worker No. 1, Jane Doe Medical Worker No. 1, Puffnock, and John Doe Corrections Officer Nos. 1-6, were present and/or arrived on scene in the vestibule and witnessed Mr. Fry injured on the ground.

73.     It was obvious and Defendants knew that Mr. Fry had suffered a head/neck/spinal cord injury for which he was showing signs and symptoms.

74.     None of the Defendants present, or who responded to the male booking vestibule during this time, did anything to secure or immobilize Mr. Fry's head or neck.

75.     Approximately 17 minutes after being placed on the floor and propped up against the wall in the male booking vestibule, Defendants Paramedic Beran and Giusti, EMT arrived and entered the male booking vestibule with a gurney.

76.     Defendants Tellier, Puffnock, and/or John Doe Corrections Officer No. 5 then used additional unreasonable, gratuitous, and outrageous force against Mr. Fry by picking him up off

the floor by his arms, with Mr. Fry's legs and feet collapsing underneath him. Mr. Fry was unable to stand or control his extremities and he collapsed and/or was dropped by Defendants Tellier, Puffnock, and/or John Doe Corrections Officer No. 5 as they yanked up on Mr. Fry's arms.

77.     Defendants Arbogast and John Doe Medical Worker No. 1 then joined in with Defendants Tellier, Puffnock, and/or John Doe Corrections Officer No. 5 and used unreasonable, gratuitous, and outrageous force against Mr. Fry by yanking him off of the ground by his arms, pulling up on his belt from behind, and pushing Mr. Fry face down onto the gurney, bending Mr. Fry over the gurney with his knees on the floor.

78.     Defendants Tellier, Puffnock, John Doe Corrections Officer No. 5, John Doe Medical Worker No. 1, Arbogast, Paramedic Beran, and Giusti, EMT then all participated in picking Mr. Fry up and violently throwing him onto the gurney face down with the back of the gurney in an upright position, after which they then violently grabbed Mr. Fry's legs and pulled them onto the gurney and then flipped Mr. Fry over onto his back. To the extent Lorain County Jail employees participated, this too amounted to an unreasonable, gratuitous, and outrageous use(es) of force against Mr. Fry.

79.     None of the Defendants present in the male booking vestibule during this time did anything to intervene to prevent the gratuitous, unreasonable, and outrageous uses of force against Mr. Fry, or otherwise did anything to secure or immobilize Mr. Fry's head or neck.

80.     Mr. Fry was taken to the University Hospitals Elyria Medical Center ("UH Elyria") Emergency Department where he complained of 10/10 pain and paresthesia and weakness in his bilateral upper and lower extremities.

81.     Imaging studies at UH Elyria revealed multiple fractures in Mr. Fry's cervical spine with bleeding into and swelling of his spinal cord.

82.     UH Elyria transported Mr. Fry to University Hospitals Cleveland Medical Center for a higher level of care, including neurosurgical care to address his fractures and decompress and stabilize his cervical spine and portions of his thoracic spine.

83.     Mr. Fry's traumatic spinal cord injury, sustained at the Lorain County Jail on May 12, 2023, when he was subjected to repeated uses of unreasonable, gratuitous, and outrageous force, all without any medical intervention to address his serious medical needs, is permanent.

## FIRST CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against Defendants Tellier, Puffnock, Jones, Sebeiah, John Doe Corrections Officer Defendant Nos. 1-6, Jane Doe Corrections Officer No. 1, and John Doe Medical Worker No. 1 in Their Individual Capacities for Excessive Force in Violation of the Fourth and/or Fourteenth Amendments.)**

84.     Plaintiff incorporates and restates each and every preceding paragraph by reference as if fully rewritten herein.

85.     On the date and places within the Lorain County Jail described above herein, the Defendants named in this First Claim for Relief, acting under color of law, used unnecessary, unreasonable, gratuitous, and outrageous excessive force on Plaintiff Mr. Fry in violation of his clearly established rights guaranteed by the Fourth and/or Fourteenth Amendments and/or otherwise participated in, ratified, failed to intervene upon, and/or supervised said uses of force.

86.     The uses of force by the Defendants named in this Claim for Relief constitute wanton, reckless, and intentional conduct warranting the imposition of exemplary punitive damages.

87.     Faced with the circumstances present at the times and places within the Lorain County Jail on May 12, 2023, alleged herein, reasonable corrections and law enforcement officers and medical personnel would have known that the uses of force at issue, violated Mr. Fry's clearly established Fourth and/or Fourteenth Amendment rights to be free from unreasonable force.

88.     The Defendants named in this Claim for Relief callously and recklessly disregarded Mr. Fry's clearly established Fourth and/or Fourteenth Amendment rights.

89.     The force employed by the Defendants named in this Claim for Relief who participated in the foregoing acts and omissions, ordered, authorized, directed, supervised, approved and/or ratified and/or acquiesced, failed and/or refused to intervene or otherwise prevent the foregoing acts and omissions, engaged in conduct under color of state law which deprived Mr. Fry of his clearly established Fourth and/or Fourteenth Amendment rights.

90.     As a direct and proximate result of the foregoing conduct surrounding the uses of force at issue, including these Defendants' failure to intervene, their ratification and approval, and/or their supervisory liability in connection with the uses of force at issue, the Defendants named in this Claim for Relief deprived Mr. Fry of his clearly established rights under the Fourth and/or Fourteenth Amendments.

91.     As a direct and proximate result of these Defendants' violations of Mr. Fry's constitutional rights, Mr. Fry endured and suffered and will continue to endure and suffer into the future, extreme conscious physical, mental, and emotional pain and suffering, pecuniary loss, medical bills, and lost earnings and/or benefits, past and future.

92.     At all times relevant, Defendant Jones, and other Defendants acting in a supervisory role, were responsible for supervising the Defendants who engaged in unreasonable, gratuitous, and outrageous uses of force against Mr. Fry, and for authorizing the force used against Mr. Fry, and approved of and ratified said uses of force, rendering them liable under 42 U.S.C. § 1983 for violating Mr. Fry's clearly established Fourth and/or Fourteenth Amendment rights.

93.     At all times relevant, the Defendants named in this First Claim for Relief were acting under color of law and within the course and scope of their employment with their respective

18

law enforcement agency employers/political subdivisions pursuant to their official law enforcement or official duties with Lorain County and, in the case of Defendant Sebeiha, the City of Elyria. Accordingly, pursuant to Ohio Revised Code ("R.C.") Section 2744.07, Defendants Lorain County and the City of Elyria must indemnify the conduct and any judgment rendered against their employees named in this First Claim for Relief.

**WHEREFORE,** Plaintiff demands judgment against the Defendants named in this First Claim for Relief, jointly and severally, for:

a) Compensatory damages in an amount in excess of FORTY MILLION DOLLARS ($40,000,000) that will fully and fairly compensate Plaintiff Jeffrey Fry for his injuries, damages and loss, past and future, including medical care, lost earnings, and lost earning capacity;

b) Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d) All such other relief to which Plaintiff is entitled or this Court deems equitable.

## SECOND CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against Defendants Tellier, Puffnock, Sebeiha, Jones, John Doe Corrections Officer Nos. 1-6, Jane Doe Corrections Officer No. 1, Arbogast, John Doe Medical Worker No. 1, and Jane Doe Medical Worker No. 1 for Deliberate Indifference to Serious Medical Needs in Violation of the Fourth and/or Fourteenth Amendments.)**

94.     Plaintiff incorporates and restates each and every preceding paragraph by reference as if fully rewritten herein.

95.     At all times relevant, while in the custody, care, and control of the Lorain County Sheriff and the Elyria Police at the Lorain County Jail, Plaintiff Jeff Fry was entitled to medical care and treatment for his serious medical needs.

96.     This Second Claim for Relief is brought against the Defendants named above, pursuant to 42 U.S.C. § 1983, for deliberate indifference to and callous and/or reckless disregard for the rights and critical medical needs of Plaintiff Jeffrey Fry, an individual suffering from an objectively obvious and known acute medical condition that required timely and prompt appropriate care, treatment, assessment, and intervention to prevent substantial physical injury which was substantially certain to and did occur.

97.     At the aforementioned times and places within the Lorain County Jail on May 12, 2023, the Defendants named in this Second Claim for Relief, acting under color of law, recognized, knew or should have known, and/or witnessed events that demonstrated that Mr. Fry had a serious and life-threatening head/neck/spinal cord injury that required prompt medical intervention to avoid progressive physical deterioration and potential death.

98.     Despite knowledge of Mr. Fry's serious medical condition and needs, the Defendants named in this Claim for Relief were deliberately indifferent to and/or acted with callous/reckless disregard for those serious medical needs by failing and/or refusing to summon or to provide the necessary medical care, assessment, evaluation, intervention, referral and treatment in a timely manner that Mr. Fry required, and, acted or failed to act in a way that exacerbated and made worse Mr. Fry's head/neck/spinal cord injury and serious medical needs.

99.     The Defendants named in this Claim for Relief knew, or should have known, that taking no action and/or using the types and amount of force described herein and/or participating in said uses of force and/or authorizing and/or acquiescing in the types and amount of force used against Mr. Fry, could and would result a permanent spinal cord injury and/or the exacerbation of Plaintiff's spinal cord injury.

100. As a direct and proximate result of the conduct of the Defendants named in this Second Claim for Relief in denying Mr. Fry necessary medical assessment, evaluation, care, intervention, referral and treatment, Mr. Fry endured and suffered, and will continue to endure and suffer into the future, extreme conscious physical, mental and emotional pain and suffering, pecuniary loss, medical bills, and lost earnings and/or benefits, past and future.

101. At all times relevant, the Defendants named in this Second Claim for Relief were acting under color of law and within the course and scope of their employment with their respective law enforcement agency employers/political subdivisions pursuant to their official law enforcement or official duties with Lorain County and, in the case of Defendant Sebeiha, the City of Elyria. Accordingly, pursuant to Ohio Revised Code ("R.C.") Section 2744.07, Defendants Lorain County and the City of Elyria must indemnify the conduct and any judgment rendered against their employees named in this First Claim for Relief.

**WHEREFORE,** Plaintiff demands judgment against Defendants named in this Second Claim for Relief, jointly and severally, for:

a) Compensatory damages in an amount in excess of FORTY MILLION DOLLARS ($40,000,000) that will fully and fairly compensate Plaintiff Jeffrey Fry for his injuries, damages and loss, past and future, including medical care, lost earnings, and lost earning capacity;

b) Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c) Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d) All such other relief to which Plaintiff is entitled or this Court deems equitable.

**THIRD CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 Against Defendants Lorain County Sheriff Stammitti, in His Official Capacity, City of Elyria, and Jones in her Individual Capacity for Failure to Train and Supervise, Ratification, Failure to Take Corrective Measures and for Unconstitutional Customs, Policies, and Practices Causing Constitutional Violation.)**

102.   Plaintiff incorporates and restates each and every preceding paragraph by reference as if fully rewritten herein.

103.   At all times relevant, Defendants Lorain County Sheriff, City of Elyria Police Department, and Jones knew, or should have known, of a history, custom, propensity, and pattern at times relevant to the allegations herein of Lorain County corrections officers/personnel at the Lorain County Jail and Elyria police officers using unreasonable, gratuitous, and outrageous force against detainees in their custody and failing to provide medical care and being deliberately indifferent to detainees' serious medical needs.  These Defendants' disregard of this knowledge, or failure and/or refusal to adequately investigate and discover and correct such history, customs, and propensities, proximately caused the violation of Plaintiff Jeffrey Fry's Fourth and/or Fourteenth Amendment rights to be free from unreasonable seizures.

104.   At all times relevant, Defendants Lorain County Sheriff Phil Stammitti and the City of Elyria Police Department, and each of them separately, promulgated and maintained and/or were deliberately indifferent to unconstitutional customs, policies or practices of permitting, ignoring and condoning and/or encouraging, ratifying, and/or failing to discipline officers, deputies, and other employees and agents who use gratuitous  unreasonable force, or to participate and/or acquiesce in the use of such force on detainees at the Lorain County Jail or otherwise in custody, including Plaintiff Jeffrey Fry.

105.   At all times relevant the Defendants named in this Third Claim for Relief had a pattern and practice of failing to adequately train and/or supervise and investigate their employee

officers, including the individual Defendants named in this case, on the usually and known recurring circumstances likely to be encountered by these officers, including, but not limited to, uses of force and providing medical care to detainees with serious medical needs.

106.    These customs, policies and/or practices were the direct and proximate cause of the constitutional violations visited upon, and the injuries sustained by Mr. Fry at issue herein.

107.    At all times relevant, the policies, customs and/or procedures referenced in this Third Claim for Relief were facially and/or *de facto* violative of the clearly established and known rights of detainees at the Lorain County Jail and/or in the custody of the Elyria Police Department, including Mr. Fry and their implementation constitutes deliberate indifference to and/or reckless and callous disregard for the constitutional rights of said detainees, including Mr. Fry, secured by the Fourth and/or Fourteenth Amendments, including the rights to be free from unreasonable force and to adequate medical care.

108.    At all times relevant, the policies, customs and/or procedures referenced in this Third Claim for Relief were applied in such a manner, and known by the Defendants named in this Third Claim for Relief to be applied in such a manner, such that violations of the constitutional rights of detainees at the Lorain County Jail and in the custody of the Elyria Police Department, including Plaintiff Jeff Fry, were likely and substantially certain to, and did, occur.  Furthermore, the application and/or misapplication of these policies, practices and/or procedures amount to violations of the constitutional rights of said detainees, including Mr. Fry, secured by the Fourth and/or Fourteenth Amendments, including the right to be free from unreasonable seizures and the right to adequate medical care.

**WHEREFORE,** Plaintiff demands judgment against the Defendants named in this Third Claim for Relief, jointly and severally, for:

a)   Compensatory damages in an amount in excess of FORTY MILLION DOLLARS ($40,000,000) that will fully and fairly compensate Plaintiff Jeffrey Fry for his injuries, damage and loss, including medical care, lost earnings, and lost earning capacity;

b)   Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

c)   All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

**FOURTH CLAIM FOR RELIEF**

**(Assault and Battery Against Defendants Tellier, Puffnock, Arbogast, Lifecare Ambulance, Inc., Paramedic Beran, Giusti, EMT, John Doe Corrections Officer Nos. 1 and 5, and John Doe Medical Worker No. 1)**

109.   Plaintiff incorporates and restates each and every preceding paragraph as if fully rewritten herein.

110.   On May 12, 2023, at the times and places at the Lorain County Jail described above herein, the Defendants identified in this Fourth Claim for Relief, while acting within the course and scope of their employment, respectively, threatened bodily harm against Plaintiff Jeffrey Fry, which caused Mr. Fry to be in imminent fear of physical injury and death.

111.   The Defendants named in this Third Claim for Relief had the apparent ability to carry out the threats of bodily harm, and, in fact did, intentionally and without permission or privilege, physically injure Mr. Fry.

112.   The Defendants named in this Third Claim for Relief assaulted and battered Mr. Fry in a wanton, reckless, and intentional manner. Accordingly, these Defendants are not entitled to any immunities or privileges under Ohio law for their conduct.

113.   These acts committed by the Defendants named in this Fourth Claim for Relief against Mr. Fry directly and proximately caused him to sustain serious physical injury, mental pain and suffering and permanent disability, including, but not limited to the inability to perform his

activities of daily living and have rendered him substantially and permanently physically deformed.

114.    As a direct and proximate result of these Defendants' unlawful acts of assault and battery committed against Mr. Fry, he was forced to and did endure and suffer extreme physical, mental, and emotional pain and suffering, pecuniary loss, including medical expenses, and lost earnings and/or benefits, past and future.

115.    Defendant Lifecare Ambulance, Inc. is vicariously responsible for the conduct of Defendants Paramedic Beran and Giusti, EMT.

**WHEREFORE,** Plaintiff demands judgment against the Defendants named in this Fourth Claim for Relief, jointly and severally, for:

a)    Compensatory damages in an amount in excess of FORTY MILLION DOLLARS ($40,000,000) that will fully and fairly compensate Plaintiff Jeffrey Fry for his injuries, damage and loss, including medical care, lost earnings, and lost earning capacity;

b)    Punitive damages in an amount that will adequately punish and deter the conduct alleged herein;

c)    Costs of suit and reasonable attorneys' fees; and

d)    All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

## FIFTH CLAIM FOR RELIEF

**(Intentional Infliction of Emotional Distress Against Defendants Tellier, Sebeiah, Puffnock, Jones, Arbogast, Lifecare Ambulance, Inc., Paramedic Beran, Giusti, EMT, John Doe Corrections Officer Nos. 1-6, Jane Doe Corrections Officer No. 1, John Doe Medical Worker No. 1, and Jane Doe Medical Worker No. 1)**

116.    Plaintiff incorporates and restates each and every preceding paragraph as if fully rewritten herein.

117.    At the aforementioned times and places within the Lorain County Jail on May 12, 2023, the Defendants named in this Fifth Claim for Relief either intended to cause severe emotional distress or knew or should have known that their actions and omissions would result in severe emotional distress to Plaintiff Jeffrey Fry.

118.    The Defendants named in this Fifth Claim for Relief's conduct was so extreme and outrageous as to go beyond all bounds of decency and was utterly intolerable in a civilized society.

119.    As a direct and proximate result of the extreme and outrageous conduct alleged herein, Mr. Fry endured and suffered, and will continue to endure and suffer into the future, severe psychic injury of such a serious nature that no reasonable person could be expected to endure.

**WHEREFORE,** Plaintiff demands judgment against the Defendants named in this Fifth Claim For Relief, jointly and severally, for:

a.    Compensatory damages in an amount in excess of FORTY MILLION DOLLARS ($40,000,000) that will fully and fairly compensate Plaintiff for his injuries, damages, and loss, including medical care, lost earnings, and lost earning capacity;

b.    Punitive damages in an amount that will adequately punish and deter the conduct alleged herein;

c.    Reasonable costs of suit and attorneys' fees;

d.    All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

## SIXTH CLAIM FOR RELIEF

**(Medical Negligence – Recklessness Against Defendants Lifecare Ambulance, Inc., Paramedic Beran, and Giusti, EMT)**

120.    Plaintiff restates and incorporates by reference each and every preceding paragraph as if fully rewritten herein.

121.    At all times relevant, Defendants Paramedic Beran and Giusti, EMT had an emergency medical provider-patient relationship with Plaintiff Jeffrey Fry.

122.    At all times relevant, Defendants Paramedic Beran and Giusti, EMT were under an applicable duty to render care to Mr. Fry in a manner consistent with the minimum standards in their field and practice.

123.    As set forth herein above, and as depicted on surveillance video footage, Defendants Paramedic Beran and Giusti, EMT violated the applicable standard(s) of care and acted callously and with a reckless disregard for Mr. Fry's safety and well-being under circumstances where serious injury was substantially likely to and did occur to Mr. Fry.

124.    As a direct and proximate result of Defendant Paramedic Beran and Giusti, EMT's reckless and callous conduct, Mr. Fry endured and suffered and will continue to endure and suffer into the future physical and emotional pain and suffering, medical bills and lost earnings and/or benefits, past and future.

125.    The injuries sustained by Mr. Fry as a result of the conduct by these Defendants, as alleged herein, proximately caused Mr. Fry's inability to perform his activities of daily living and caused him to suffer permanent and substantial physical deformities, all of which are permanent.

**WHEREFORE,** Plaintiff demands judgment against the Defendants named in this Sixth Claim For Relief, jointly and severally, for:

a.    Compensatory damages in an amount that will fully and fairly compensate Plaintiff for his injuries, damages, and loss, including medical care, lost earnings, and lost earning capacity;

b.    Punitive damages in an amount that will adequately punish and deter the conduct alleged herein;

c.    Reasonable costs of suit and attorneys' fees;

27

d.      All such other relief to which Plaintiff is entitled and/or this Court deems equitable.


**_TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED._**


Dated: January 23, 2024.


_/s/ Nicholas A. DiCello_
NICHOLAS A. DICELLO (0075745)
JEREMY A. TOR (0091151)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
_ndicello@spanglaw.com_
_jtor@spanglaw.com_

**_Counsel for Plaintiff_**