**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JEFFREY FRY,                                          :

               Plaintiff,              :           Case No. 1:24-cv-00126

***vs.***                                                  :           Judge Bridget Meehan Brennan

PHIL R. STAMMITTI, *et al.*,                :

               Defendants.            :

**REPLY IN SUPPORT OF DEFENDANT BRIAN TELLIER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 89)**

Officer Brian Tellier moves for partial summary judgment with respect to Plaintiff's deliberate indifference claim based on the speed with which medical assistance was summoned and secured for Plaintiff Jeffrey Fry after Plaintiff's initial injury occurred.

In this case, it is undisputed that Mr. Fry was under the care of medical staff less than five minutes after his injury. At that point, Sixth Circuit law is clear. A corrections officer like Mr. Tellier is entitled to rely on the assessments and treatment of the medical staff thereafter. See e.g., *Winkler v. Madison Cty.*, 893 F.3d 877, 895-96 (6th Cir. 2018) (finding no merit to the argument that a law enforcement officer failed to provide responding medical personnel with sufficient information about a pretrial detainee's condition and that law enforcement officers are entitled to rely on the conclusions of medical personnel regarding treatment); see also *McGaw v. Sevier County*, 715 F. App'x 495, 498-99 (6th Cir. 2017) ("Where, as here, an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional [that] the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice."); *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (concluding that nonmedical jail personnel are entitled to reasonably rely on the assessments

made by the medical staff); *Britt v. Hamilton Cty.*, 2022 U.S. App. LEXIS 3852, 2022 WL 405847, at *5 (6th Cir.) (finding a correctional officer's "active effort" to respond to concerns about an inmate's medical condition and did not amount to deliberate indifference); *Whyde v. Sigsworth*, 2022 U.S. Dist. LEXIS 59014 (corrections officer was entitled to rely on a nurse's medical judgment and assessment).

Plaintiff spends the first twelve pages of his response in opposition to Officer Tellier's Motion for Partial Summary Judgment recounting and detailing the alleged excessive force claims against Officer Tellier – claims for which Officer Tellier has <u>not</u> sought summary judgment in these proceedings. Plaintiff's allegations of excessive force against Officer Tellier are irrelevant to Officer Tellier's Motion for Partial Summary Judgment regarding medical care. Plaintiff does not substantively address Officer Tellier's arguments concerning the allegations of medical deliberate indifference until page 12 of his brief (See Doc. 100, PageID 3470).

"[T]he plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). Tellingly, the cases that Plaintiff relies on as "clearly established" law are both unreported cases which cannot, as a matter of law, clearly establish anything. For Plaintiff to overcome qualified immunity, he must "point[] to either 'controlling authority' or 'a robust consensus of cases of persuasive authority'" that Officer Tellier violated the law regarding deliberate indifference. *Hidden Vill., LLC v. City of Lakewood*, 734 F.3d 519, 529 (6th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). These cases must have "placed the . . . constitutional question beyond debate.". *Al-Kidd*, 563 U.S. at 741. And the precedent "must be clear enough that every reasonable official would

[have] interpret[ed] it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018). This is a high bar. The cases cited by Plaintiff: (1) *Border v. Trumbull Cnty. Bd. of Comm'rs.*, 414 Fed. Appx. 831, 838-39 (6th Cir. 2011) and (2) a non-binding Fourth Circuit case "*Scarbro*, 374 Fed. Appx. 366 (4th Cir. 2010)"[1] do not meet this high bar.

In *Border*, the Sixth Circuit affirmed a denial summary judgment on a deliberate indifference claim to a corrections officer who recognized that a pretrial detainee was under the influence of drugs, but only summoned an unlicensed medical assistant and only requested that the unlicensed medical assistant treat a minor cut on detainee's head.  *Id.*, at  838-39. That is not the case here, where an actual licensed medical professional was summoned, and Officer Tellier expressly told that licensed medical professional, Nurse Arbogast, that Fry had fallen and hit his head:

| | |
|---|---|
| 25 | **Q.  And who responded when you said what happened** |

Page 87

| | |
|---|---|
| 1 | **here?** |
| 2 | A.  Tellier did. |
| 3 | **Q.  What did he say?** |
| 4 | A.  That he was combative.  I said, okay.  And then, |
| 5 | I said did anything else happen?  And I'm looking at |
| 6 | both the officer and Tellier, and I'm like, did he fall |
| 7 | or anything?  What's going on?  And he said that he had |
| 8 | fell. |
| 9 | **Q.  So Officer Tellier said Jeff was being combative.** |
| 10 | **True?** |
| 11 | A.  Yes. |

---

[1] Plaintiff's brief appears to cite this case twice, on pages 15 and 18, but he does not provide the full case name in either place or in his table of authorities.  Presumably, Plaintiff is citing to *Scarbro v. New Hanover County*, 374 Fed. Appx. 366 (4th Cir. 2010).

12  **Q.  And he said this in the presence of you and**
13  **Officer Sabeiha.  True?**
14  A.  Yes.
15  **Q.  And then, you had to ask a follow-up question,**
16  **did he fall, correct?**
17  A.  Yes.
18  **Q.  And Officer Tellier told you that he did fall.**
19  **True?**
20  A.  Yes.
21  **Q.  And Officer Tellier told you that he struck his**
22  **head.  True?**
23  A.  I don't believe that he had stated that.
24  **Q.  Did you ask?**
25  A.  I believe I did.

Page 88

1  **Q.  And is it your best recollection that when you**
2  **asked — let me ask.  When you asked after you confirmed**
3  **that he had fallen according to Officer Tellier, you**
4  **asked did he hit his head or something to that effect.**
5  **True?**
6  A.  Correct.
7  **Q.  And what was the response?**
8  A.  I believe he said yes.
9  **Q.  Okay.  So you knew before you ever started your**
10  **assessment of Mr. Fry that he struck his head on the**
11  **wall, or the ground, or both.  True?**
12  A.  Potentially, yes.
13  **Q.  Okay.  So you knew there was a potential for a**
14  **head injury, right?**
15  A.  Possibly.
16  **Q.  And you knew there was a potential for a neck**
17  **injury.  True?**
18  A.  I mean, I can't say yes to that because I don't
19  know if there could have been a neck injury.
20  **Q.  You couldn't rule it out.  True?**
21  A.  Right.
22  **Q.  And so, given that he had struck his head, did**
23  **you ask why are you dragging this guy across the ground**
24  **like that if he's got a potential head injury?  You**
25  **didn't do that, did you?**

Page 89

1  A.  No.

See Dep. of Lauren Arbogast, Doc. 70, at PageID 864, pp. 86:25 – 89:1 (emphases added).

Despite this testimony where Nurse Arbogast testified that Officer Tellier expressly told her that Plaintiff Fry had hit his head, Plaintiff argues that Office Tellier "lied to medical personnel about Fry's initial injury" and cites to the deposition of Lauren Arbogast (Doc. 70, at PageID 868-869, 872, pp. 104:15-105:1, 117:25-119:18) to support that claim of deliberate indifference.

However, a review of that testimony of Lauren Arbogast does not show that Officer Tellier lied to Nurse Arbogast, as Plaintiff suggests.  Rather, it only demonstrates that Nurse Arbogast testified that she would have managed the situation differently had she received more information. The exchanges cited by Plaintiff are as follows and are far from demonstrating that Officer Tellier lied to Nurse Arbogast about Jeffrey Fry falling and hitting his head:

> 15  **Q.  Same thing with Officer Tellier.  If Officer**
> 16  **Tellier had told you something similar, that he had**
> 17  **actually slammed Jeff into a wall head first, you would**
> 18  **have likewise managed Jeff differently.  True?**
> 19  A.  Yes.
> 20  **Q.  And you would have taken measures to protect and**
> 21  **immobilize his neck.  True?**
> 22  A.  Yes.
> 23  **Q.  And you probably would have said something to the**
> 24  **effect of well, if that's the case, why did you move him**
> 25  **from the location where this occurred, right?**

> Page 105
> 1  A.  Correct.

Doc. 70, at PageID 868-69.

25    Q. Reading on, "This caused Fry to fall head first

Page 118

1  into the nearby wall.  Fry's face/head struck the lower
2  portion of the nearby wall and he appeared to have gone
3  limp."  Let me stop there.  That observation of
4  somebody's head striking the lower portion of a nearby
5  wall, and then his body going limp, that's important
6  information from a medical standpoint, isn't it?
7    A. Yes.
8    Q. Is that information that either Officer Sabeiha
9  or Brian Tellier gave you?
10    A. No.
11    Q. Had you known that his body immediately went limp
12  after his head struck this wall would you have
13  instituted some of these protocols that you explained
14  earlier about immobilizing his neck?
15    A. Yes.
16    Q. Reading on.  Officer Sabeiha observed Fry
17  mumbling and appeared heavily dazed from the impact."
18  Let me stop there.  Did they tell you that?
19    A. No.
20    Q. That's concerning information from a medical
21  standpoint that you as an LPN would raise the concern
22  over a serious head or neck injury.  True?
23    A. Correct.
24    Q. And had you been told that basic information
25  about what just occurred, you would have gone about

Page 119

1  treating Jeff differently, correct?
2    A. Correct.
3    Q. You would have immediately called 911, correct?
4    A. Correct.
5    Q. You would have told people, don't move this man,
6  you could really injure his spinal cord.  True?
7    A. I would have told them do not touch him.
8    Q. Having read this, do you believe these officers
9  intentionally withheld this information from you?
10        MS. GRIGSBY:  Objection.
11    A. I don't know.  I don't know.
12  BY MR. DiCELLO:
13    Q. Well, they didn't tell you, right?  They did not
14  tell you this, correct?
15    A. They did not tell me any of this.
16    Q. Is this the first time that you're learning about
17  this?
18    A. Yes.

Doc. 70, at PageID 872.

6

While Nurse Arbogast testified that she would have managed Jeffrey Fry's care differently if she had *additional* information, the information provided to her by Officer Tellier – that Fry had fallen and hit his head, was not inaccurate or a lie as Plaintiff attempts to characterize it.

Plaintiff does not cite to or address *Winkler v. Madison Cty.*, 893 F.3d 877, 895-96 (6th Cir. 2018) in his brief in opposition, despite Officer Tellier relying on it in his motion for summary judgment.  This particular case is much more similar to *Winkler* than it is to *Border*.  In *Winkler*, it was argued that the death of a pretrial detainee could have been avoided had jail personnel provided medical personnel "with sufficient information about [the detainee's] medical condition."  The Sixth Circuit found no merit to that argument and confirmed that law enforcement officers are entitled to rely on the conclusions of medical personnel regarding treatment of a detainee or inmate.  *Id.*, at 896-97.

After Fry's initial injury, a licensed medical professional was summoned almost immediately and began her assessment less than five minutes after the injury occurred (See Doc. 89, at PageID 2566-2571, outlining the timeline of injury and the medical response thereto); upon responding to the scene, Nurse Arbogast asked Officer Tellier what happened to which Officer Tellier responded that Fry had fallen and hit his head (Doc. 70, at PageID 864-65).  While Nurse Arbogast later testified that she may have acted differently if she had additional information about Jeffrey Fry's injury, she had the information she needed to suspect a potential neck injury:

> 13   **Q. Okay. So you knew there was a potential for a**
> 14 **head injury, right?**
> 15   A. Possibly.
> 16   **Q. And you knew there was a potential for a neck**
> 17 **injury. True?**
> 18   A. I mean, I can't say yes to that because I don't
> 19 know if there could have been a neck injury.
> 20   **Q. You couldn't rule it out. True?**
> 21   A. Right.

Doc. 70, a PageID 864.

Once Nurse Arbogast responded and began her initial assessment of Jeffrey Fry – less than five minutes after the injury – Officer Tellier was and is permitted to rely upon her assessment and expertise. See e.g., *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (concluding that nonmedical jail personnel are entitled to reasonably rely on the assessments made by the medical staff); *Britt v. Hamilton Cty.*, 2022 U.S. App. LEXIS 3852, 2022 WL 405847, at *5 (6th Cir.) (finding a correctional officer's "active effort" to respond to concerns about an inmate's medical condition and did not amount to deliberate indifference); *Whyde v. Sigsworth*, 2022 U.S. Dist. LEXIS 59014 (corrections officer was entitled to rely on a nurse's medical judgment and assessment).

Officer Tellier informed Nurse Arbogast that Fry had fallen and hit his head. He did not lie to Nurse Arbogast and what Plaintiff cites is not Nurse Arbogast testifying that "Tellier lied to me" - her testimony was that she did not receive additional information that may have altered the way she managed the situation. While that hindsight from Nurse Arbogast is understandable, it does not render Officer Tellier liable for deliberate indifference.

To the extent that Plaintiff relies on what was told to EMS responders about Mr. Fry's injury as grounds for denying Officer Tellier summary judgment on the deliberate indifference

claim, that argument is a red herring.  Upon responding to the jail for a call of "general unknown medical" responding EMS received information from the nurse – not Officer Tellier.

> 8  Q  Okay.  You were aware that Jeff had fallen
> 9     forward, correct?
> 10 A  Yes, to some degree.  We didn't know the nature
> 11    of it.  They didn't elaborate it, and the
> 12    patient didn't elaborate on it either.  He
> 13    didn't seem severely injured, and he didn't
> 14    tell us that anything hurt.
> 15 Q  How did you obtain this information about the
> 16    fall; was it in the vestibule with the jail
> 17    staff, or was it through dispatch on route?
> 18 A  Through the nurse.  We were dispatched for an
> 19    unknown medical, a general unknown medical.  No
> 20    other information was given.
> 21 Q  Understood.
> 22       So you were dispatched for a general
> 23    unknown medical situation, and you knew it was
> 24    at the Lorain County jail, correct?
> 25 A  Yes.

Dep. of Hannah Giusti Doc. 74, at PageID 1181 (emphasis added).

> 15 Q  So Officer Tellier didn't provide you any
> 16    additional helpful information, at least from
> 17    your perspective?
> 18 A  Not from a medical history standpoint.

*Id.*, at PageID 1209.

Accordingly, based upon the timeline set forth in Officer Tellier's Motion for Partial Summary Judgement and the admission of Plaintiff's own expert that no one could have known the actual nature of Plaintiff's initial injury while he was still at the jail (See Doc. 77-1, PageID 1408), Plaintiff has failed to satisfy the subjective component of his deliberate indifference claim and no constitutional violation occurred with respect to Plaintiff's alleged deliberate indifference claim.  Officer Tellier (nor any other Defendant) was not deliberately indifferent to Mr. Fry's

serious medical needs once Mr. Fry's initial injury occurred because Mr. Fry timely received medical attention.  Officer Tellier is entitled to qualified immunity with respect to that claim.

Finally, with respect to Plaintiff's IIED claim, Officer Tellier is entitled to summary judgment as a matter of law for the reasons set forth in his Motion for Partial Summary Judgment.

In his opposition to Officer Tellier's Motion for Partial Summary Judgment, Plaintiff appears to quote his own "medical chart" without any citation to the record for the proposition that "he expressed suicidal thoughts after his injury."  (Doc. 100, PageID 3477).  He then quotes cites the report of life care planner Dr. Camilo Castillo for the report's recommendations that Mr. Fry "take prescription medication for depression, and anxiety, moving forward."  (*Id.*)  It should be noted that Plaintiff Fry does not cite any deposition testimony from Dr. Castillo, as Dr. Castillo did not testify in his deposition that he diagnosed Mr. Fry with depression.  See Doc. 97-1, generally.

More importantly, Plaintiff himself has testified he does not suffer from such emotional injuries:

```
11  Q   And since you've left the hospital or the
12      nursing home, have you had any mental
13      health-type treatment?
14  A   No.
15  Q   And I know you indicated before that you got,
16      like, some loss of enthusiasm, loss of interest
17      in certain things.
18          Do you have any other sort of mental
19      health symptoms, conditions that you would
20      attribute to the injuries from the jail?
21  A   No.
```

Deposition of Jeffrey Fry, Doc. 59, at PageID 497.

Defendant Tellier respectfully requests that this Court **GRANT** his Partial Motion for Summary Judgment with respect to Plaintiff's claims of deliberate indifference and intentional infliction of emotional distress.

Respectfully submitted,

/s/  Matthew S. Teetor

Matthew S. Teetor            (0087009)
Andrew N. Yosowitz          (0075306)
TEETOR | WESTFALL
200 E. Campus View Blvd., Ste. 200
Columbus, Ohio 43235
(614) 412-4000  |  Fax (614) 412-9012
email:  mteetor@teetorlaw.com
         ayosowitz@teetorlaw.com
*Attorneys for Defendant Brian Tellier*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 24th day of November, 2025, a copy of the foregoing was filed electronically. Copies will be served upon counsel of record and may be obtained through the Court's CM/ECF Systems.

/s/  Matthew S. Teetor
Matthew S. Teetor          (0087009)